**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                              Case No. 10-20148

JESSE ALBERT YOUNG,

    Defendant.
_____/

**OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTION NUMBER 3
AND DETERMINING FAIR SENTENCING ACT NOT RETROACTIVE**

      The matter is before the court for the sentencing of Defendant Jesse Albert Young following his guilty plea pursuant to an agreement under Federal Rule of Criminal Procedure 11. Defendant has filed two sentencing memoranda raising a total of three objections, and the Government has filed two memoranda in response. A sentencing is currently set for April 14, 2011. This order resolves Defendant's Objection Number 3, related to the application of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (the "FSA"). Specifically, Defendant argues in his objection that the presentence investigative report should have applied the FSA's minimum sentence, rather than the mandatory minimum in place prior to the date the FSA was enacted. For the reasons stated below, the court finds that the FSA does not apply to persons in Defendant's position, that is, those who committed their offense prior to the enactment of the FSA. Accordingly, Defendant's Objection Number 3 will be overruled.

## I. INTRODUCTION

The FSA was signed into law on August 3, 2010. The question of whether defendants who had not yet been sentenced as of August 3, 2010 should have the benefit of the FSA has proven controversial in judicial and academic circles, and a substantial number of district courts have taken opposing views on the issue. Some district courts have found the FSA to apply retroactively to defendants who committed offenses under the pre-FSA regime but were sentenced post-FSA. *See, e.g., United States v. Douglas*, ___ F. Supp. 2d ___, 2010 WL 4260221 (D. Me. Oct. 27, 2010); *United States v. Holloman*, ___ F. Supp. 2d ___, 2011 WL 607121 (C.D. Ill. Feb. 18, 2011). Others have disagreed and found the FSA not to apply retroactively. S*ee, e.g., United States v. Santana*, ___ F. Supp. 2d ___ 2011 WL 260744 (S.D.N.Y. Jan. 20, 2011); *United States v. Lightfoot*, No. 3:10CR42-HEH, 2010 WL 5300890 (E.D. Va. Dec. 22, 2010). In this district, the three judges who have ruled on the issue have all found that the FSA is not retroactive, viz. it does not apply to defendants who had committed the offense but not been sentenced prior to August 3, 2010. *See United States v. Reddick*, 10-20064 (E.D. Mich. Feb. 28, 2011) (Cook, J.); *United States v. Franklin*, No. 10-20467, 2011 WL 346085 (E.D. Mich. Feb. 3, 2011) (Ludington, J.); *United States v. Watson*, No. 10-30323, 2010 WL 3272934 at *3 n.1 (E.D. Mich. Aug. 12, 2010) (Murphy, J.). For the reasons stated below, the court now joins other judges of this district, and finds that the FSA is not retroactive.

## II. DISCUSSION

Appellate courts are in uniform agreement that the FSA is not retroactive with respect to defendants that had already been sentenced as of the date the law was passed. *United States v. Carradine*, 621 F.3d 575 (6th Cir. Sept. 20, 2010); *United States v. Doggins*, ___ F.3d ___, 2011 WL 438935 (5th Cir. Feb. 9, 2011); *United States v. Diaz*, 627 F.3d 930 (2d Cir. Dec. 15, 2010); *United States v. Reevey*, 631 F.3d 110 (3d Cir. Dec. 14, 2010); *United States v. Wilson*, No. 10-4160, 2010 WL 4561381 (4th Cir. Nov. 12, 2010); *United States v. Hall*, No. 09-10216, 2010 WL 4561363 (9th Cir. Nov. 10, 2010); *United States v. Lewis*, 625 F.3d 1224 (10th Cir. Oct. 29, 2010); *United States v. Brewer*, 624 F.3d 900 (8th Cir. Oct. 21, 2010); *United States v. Bell*, 624 F.3d 803 (7th Cir. Oct. 20, 2010); *United States v. Gomes*, 621 F.3d 1343 (11th Cir. Oct. 1, 2010) (per curiam); see *United States v. Williams*, 630 F.3d 44, 62 (1st Cir. Dec. 28, 2010) ("Other courts to consider the issue have reasoned that the statutory changes wrought by the Fair Sentencing Act do not have retroactive effect and thus would not benefit a defendant in Williams's position, although that remains for now an open question in this circuit.").

The appellate courts have reached this result using largely identical reasoning. In 1871, Congress passed the "general savings statute" or "Savings Clause," later codified at 1 U.S.C. § 109, to abrogate the common-law rule that a reduction in penalty would abate all criminal prosecutions not yet final. *Warden v. Marrero*, 417 U.S. 653, 660 (1974); *United States v. Douglas*, 2010 WL 4260221, at *3 (D. Me. Oct. 27, 2010). The general savings statute provides:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the

>repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. The expiration of a temporary statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the temporary statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109. Applying this statute to the FSA, courts have concluded that, because the FSA "release[s] or extinguish[es] any penalty," and because it does not "expressly provide" for its retroactivity, a defendant who "incurred" liability—committed an offense—under the pre-FSA regime "shall be treated" as if the old penalty "still remain[ed] in force."

The Seventh Circuit recently became the first court of appeals to decide the question of whether the FSA applies to a defendant whose offense was committed prior to August 3, 2010, but who had not been sentenced as of that date, finding that it does not. *See United States v. Fisher*, ___ F.3d ___, 2011 WL 832942 (7th Cir. Mar. 11, 2011).

Although other circuits have yet to address this precise set of facts, they have spoken with respect to defendants who had been sentenced as of August 3, 2010, but had not yet concluded their direct appeals.

In *Carradine*, an oft-cited opinion by other circuits considering the retroactivity issue, the Sixth Circuit found that, in the absence of express language in the FSA providing for retroactive application, the general savings statute required the court to apply the penalty in place at the time the offense was committed. 621 F.3d at 580; *cf. United States v. Hughes*, 369 F.3d 941, 943-45 (6th Cir. 2004) (holding § 109 avoided

4

release or extinguishment of penalty of 18 U.S.C. § 641, which was amended after offense was committed and before sentencing), *vacated on other grounds*, 543 U.S. 1108 (2005). Similarly, in *Gomes*, the Eleventh Circuit found that "because the FSA took effect in August 2010, *after appellant committed his crimes*, 1 U.S.C. § 109 bars the Act from affecting his punishment." 621 F.3d at 1346 (emphasis added). Still, other circuits that have adjudicated the retroactive application of the FSA with regard to defendants already sentenced have been more reluctant to take up prematurely the question of its application to defendants who have yet to be sentenced. *See Reevey*, 2010 WL 5078239, at *4 n.5 (distinguishing cases where defendant was sentenced prior to FSA enactment from those where defendant was sentenced after it took effect); *Lewis*, 625 F.3d at 1228 ("[D]efendants being sentenced henceforth will be sentenced under a different applicable ratio.").

The Government asserts that *Carradine* controls, but some courts in this circuit have found that the language of *Carradine* constitutes non-binding dicta and that the FSA applies retroactively to defendants who had not yet been sentenced when the FSA was enacted. *United States v. Robinson*, ___ F. Supp. 2d ___, 2011 WL 379536, at *5 (E.D. Tenn. Feb. 4, 2011); *United States v. Jones*, No. 10-cr-00233, at 3 (N.D. Ohio Jan. 3, 2011); *United States v. Gillam*, ___ F. Supp. 2d ___, 2010 WL 4906283 (W.D. Mich. Dec. 3, 2010). In order to determine whether *Carradine* is binding on this court, the court looks to the holding of *Carradine* itself, and how it applies to the facts of this case.

*Carradine* held that the FSA is not retroactive with respect to a defendant who had already been sentenced, but whose appeal was pending, as of the date the law

was passed. *United States v. Carradine*, 621 F.3d 575 (6th Cir. Sept. 20, 2010). *Carradine* so held because "[t]he 'general savings statute,' 1 U.S.C. § 109, requires us to apply the penalties in place *at the time the crime was committed*, unless the new enactment expressly provides for its own retroactive application." 621 F.3d at 580 (emphasis added). *Carradine* stated that the FSA "contains no express statement that it is retroactive nor can we infer any such express intent from its plain language." *Id.* As *Carradine* dealt with a case where the defendant had already been sentenced but had a pending appeal when the FSA was enacted, the court must determine whether this language constitutes dicta with respect to a case such as that before the court, where Defendant had not yet been sentenced when the FSA was enacted. For the court to reach the conclusion that the language of *Carradine* represents dicta in the instant case, it must necessarily determine that Congress did not intend the FSA to apply to those defendants who had committed their crimes prior to August 3, 2010, but whose appeals were not final, while simultaneously finding that Congress did intend the reduced penalties of the FSA to apply to those offenders who, even though they committed their crimes prior to August 3, 2010, were not sentenced until after that date. The court would need to conclude that the FSA is partially retroactive before it could determine whether the question of partial retroactivity has already been foreclosed by binding precedent in *Carradine*. Further, under *Great Northern Railway v. United States*, 208 U.S. 452 (1908), the court must find that Congress's intent is manifested, "either expressly or by necessary implication," within the FSA itself. *Id.* at 465. As will be discussed below, the court finds no such "necessary implication," and thus concludes,

consistent with *Carradine*, that the FSA does not apply retroactively to defendants who committed their offense prior to August 3, 2010.

In those cases favoring retroactive application, the leading case is Judge Hornby's decision in *Douglas* and many of the courts that have adopted that view have quoted from *Douglas* at length. In *Douglas*, the court first distinguished pre-FSA from post-FSA cases. 2010 WL 4260221, at *3. It then rejected the defendant's arguments that the FSA did not "release or extinguish" a penalty in the meaning of the general savings statute, that it "does not apply to remedial or procedural changes," and that the Fifth or Eighth Amendments limit Congress's power to make the act apply only to post-enactment conduct. *Id.* at *3-4. The court found, however, that an application of the *Great Northern Railway* principle—that an earlier Congress could not overrule the express or necessarily implied intent of a latter one—to the evidence of legislative intent compelled the conclusion that the FSA applies to defendants who have yet to be sentenced. *Id.* at *4-6 (citing *Great Northern Ry.*, 208 U.S. 452, and *Marrero*, 417 U.S. at 659 n.10). This court respectfully disagrees with the *Douglas* reasoning. *Great Northern Railway*, in fact, compels the opposite conclusion.

In *Great Northern Railway*, the Supreme Court wrote of the general savings statute:

> [I]ts provisions cannot justify a disregard of the will of Congress as manifested, either expressly or by necessary implication, in a subsequent enactment. . . . [T]he section must be enforced unless, either by express declaration or necessary implication, arising from the terms of the law as a whole, it results that the legislative mind will be set at naught by giving effect to the provisions of [the general savings statute].

208 U.S. at 465. Applying this standard, the Court found the following clause did not except the act then at hand from the savings statute:

7

> That all laws and parts of laws in conflict with the provisions of this act are hereby repealed, but the amendments herein provided for shall not affect causes now pending in courts of the United States, but such causes shall be prosecuted to a conclusion in the manner heretofore provided by law.

*Id.* at 466 (quoting 34 Stat. 584, § 10 (1906)). Determining that this language did not, "expressly or by fair implication, conflict with the general rule established by [1 U.S.C. § 109]," the Court held that prosecutions could still be brought for violations of the laws existing prior to the amendment. *Id.* at 467. Looking to another provision of that act that saved civil remedies that would otherwise be time-barred, so long as they were brought within one year of enactment, the Court found that release of prior liability through the exception to the savings statute would result in an absurdity. *Id.* at 468. The act would set a one-year period for bringing claims under the prior law that would be barred entirely by that law's repeal. *Id.* This reasoning illustrates the importance of differentiating between statutory language which is plainly inconsistent with the savings statute (or its exception) and that which is merely supplementary to it. For an act to have retroactive effect, therefore, it must "either expressly or by necessary implication"—by direct contradiction—establish such an intent.

Courts have found such "necessary implication" in section 8 of the FSA, in which Congress gave the Sentencing Commission "emergency authority" to draw up new Guidelines to comply with the law "as soon as practicable, and in any event not later than 90 days" after August 3, 2010. *See Douglas*, 2010 WL 4260221, at *4 (explaining that Congress's direction to the Sentencing Commission to make "conforming" and "consisten[t]" Guidelines could not be realized until statute of limitations ran if the old mandatory minima were to be applied). Further, courts have noted that, once promulgated, the post-FSA Guidelines are inconsistent with the pre-FSA mandatory

8

minimum sentences. While the use of pre-FSA mandatory minima with post-FSA Guidelines is not inherently contradictory or absurd, some courts have found that it makes for a somewhat awkward rule where the mandatory minima and Guidelines were both amended by the same piece of legislation. *See Douglas*, 2010 WL 4260221, at *4 ("[T]he new Guidelines cannot be 'conforming' and 'achieve consistency' (Congress's express mandate) if they are based upon statutory minimums that cannot be effective to a host of sentences over the next five years until the statute of limitations runs on pre-August 3, 2010 conduct.").

      This court is not convinced that the FSA's grant of "emergency authority" is enough to display by *necessary* implication Congress's intent to make the FSA retroactive. It is beyond dispute that the FSA contains no express statement regarding the savings statute or retroactivity. *Carradine*, 621 F.3d at 580. Nor would application of the savings statute create a direct conflict between or amongst the FSA's provisions. A construction of the FSA rejecting retroactivity simply stops short of releasing defendants whose liability attached under the previous mandatory minima and Sentencing Guidelines from the portion of their penalty established by the statutory minimum. That the new Sentencing Guidelines should be effective for those not yet sentenced is not *inconsistent* with the retention of the mandatory minimum regime in place when a defendant committed the crime or crimes for which he is awaiting sentencing. The strongest finding that can be made with the requisite degree of certainty is that the emergency authority to amend the Guidelines is consistent with Congress's efforts to implement the FSA as quickly as possible. It does not *necessarily* follow that Congress therefore intended the FSA to also apply retroactively.

This court is not at liberty to gainsay the express directives of Congress in removing from its discretion certain sentencing options, where such directives are issued pursuant to its Constitutional authority. Even if the court could imagine alternative interpretations that have greater apparent internal consistency, such judicial creativity is immaterial. Some courts have focused on the argument that the policy behind the FSA dictates a retroactive application. For example, Judges Calabresi and Lynch of the Second Circuit have recently written concurring opinions expressing dissatisfaction with the operation of the general savings statute to bar the application of the FSA to pending cases. *United States v. Acoff*, ___ F.3d ___, 2011 WL 447043 (Feb. 9, 2011) (per curiam); *id.* at *3 (Calabresi, J., concurring) ("To the extent that one could have viewed what occurred in Congress as a response to a suggestion by courts that the sentencing statutes were heading towards unconstitutionality, one might question whether the traditional presumption against retroactivity should apply."). After acknowledging the possible rationale behind Congress's hesitancy to adopt full retroactivity, Judge Lynch wrote:

> It is more difficult, however, to understand why Congress would want to continue to require that courts impose unfair and unreasonable sentences on those offenders whose cases are still pending. Such defendants still need to be sentenced, and there are few persuasive reasons why they should be sentenced pursuant to an unjust law when Congress has already replaced it with a more just one. It seems likely that simple congressional inattention produced this result: understandably focused on the much larger question of full retroactivity, when Congress decided against making the provisions of the FSA *fully* retroactive, it may simply have overlooked the distinguishable, and much smaller, category of past offenders who are still being sentenced for pre-FSA crimes.

*Id.* at *4 (Lynch, J., concurring) (emphasis in original). However, the court is less troubled by what other courts or commentators have labeled as the inconsistent or

10

"unfair" result of sentencing defendants who committed their offense prior to the FSA differently than those who committed their offense after the FSA. The long-standing general savings clause makes such an outcome the default, and the court will not attribute an intent to override the default without the requisite necessary implication. And, as stated by Judge Rakoff:

> [T]his Court is not persuaded that such an unlikely result—by which, regardless of the penalties applicable when the crimes were committed, the sentences are a function of when the sentencing occurs—is a "necessary implication" of the terms of the FSA. . . .
> . . .
> However, as noted above, the Second Circuit, for one, has never held that the Sentencing Reform Act of 1984 trumps, or even modifies, the Savings Statute so far as mandatory penalties are concerned. . . More fundamentally, it is one thing to direct, as the FSA does, that the Sentencing Guidelines, which are now discretionary, be promptly conformed and applied to a new regime, and quite something else to infer from this that Congress necessarily intended that mandatory minimums, which are legislative dictates, be reduced retroactively in sentences following the date of the new enactment, notwithstanding the presumption of the Savings Statute. This Court concludes that nothing in the language of the FSA even hints at, let alone necessitates, the latter inference.

*Patterson,* 2010 WL 5480838, at *2. That Congress chose not to retroactively apply the FSA is not remarkable nor is it necessarily attributable to inadvertence of Congress. It appears more likely to this court that Congress knew of the issue and chose not, or could not agree, to make the FSA retroactive than that Congress overlooked in its final form the issue of retroactivity.

Further, even if the court disagreed with Congress's policy choice, such disagreement does not provide the framework for the court to find that by "necessary implication" the FSA must provide for retroactivity. "Necessary implication" does not mean, for example, the most logical, the most efficacious, or the most favored

11

interpretation. Rather, the court agrees with reasoning expressed by Judge Gibson in *United States v. Dickey*,

> [C]onjectures are of no moment. Simply stated, Congress did not provide for retroactivity. Judge Hornby recognized that the "statute itself contains no provision stating in so many words either that it applies to all sentencings going forward, or that it applies only to criminal conduct that occurs after its effective date." [*Douglas*, 2010 WL 4260221 at *3.] This Court will not seize upon and inflate the importance of isolated words and phrases such as "conforming" and "achieve consistency" in order to read between the lines when Congress chose to omit any reference to retroactivity. Statutes are fixed through the democratic process, not through judicial review. It is not the role of the courts to give effect to what certain members thought Congress *should* have done. Nor is it the role of the courts to give effect to what we judges *think* Congress should have done. The courts only give effect to what Congress *actually did.*

\_\_\_ F. Supp. 2d \_\_\_, 2011 WL 49585, at *11 (W.D. Pa. Jan. 4, 2011) (emphasis in original); *see Fisher*, 2011 WL 832942, at *2 (refusing to look to "statements of various legislators urging adoption of the FSA" because "cherry-picked statements made by proponents of the legislation cannot be relied upon as indications of the will of Congress.").

This court, disagreeing with the *Douglas* analysis, finds nothing in the FSA which "by necessary implication" demonstrates the savings clause's inapplicability. So long as the FSA may be reconciled "by fair implication" with the savings statute, the court must interpret it as such so as to give effect to the provisions of both laws. *Great Northern Ry.*, 208 U.S. at 466. For this reason, the court also finds nothing to distinguish this case from the holding in *Carradine* and thus considers itself bound by the Sixth Circuit's published decision on the question.

As Judge Lynch commented in his concurrence in *Acoff*, this issue "is simply a transitional problem." *Acoff*, 2011 WL 447043, at *4 (Lynch, J., concurring). Judge Lynch noted that "[t]he class of affected past offenders who are still subject to

mandatory sentences calculated pursuant to the old and unjust 100-to-1 ratio is presumably small," but that nonetheless "it is no comfort to those [affected] . . . to know that a relatively small number of offenders share their predicament." *Id.* The court agrees with Judge Lynch's observation as to how this "transitional problem" must be remedied, if at all:

> It may now be too late for Congress to affect many of these cases. The number of pre-FSA crack offenders whose sentences are not yet final shrinks with every day that Congress fails to act. But at least some such offenders will remain in the system for years to come. With the enactment of the FSA, Congress has finally remedied a glaring injustice in our narcotics laws. Perhaps some day it will revisit the fates of all those who are serving excessive sentences under those now-repealed laws. But even if the arguments against full retroactivity continue to prevail, Congress would do well to quickly and seriously consider whether it has inadvertently required courts to continue an unjust practice in a small but significant number of on-going cases.

*Id.* In other words, *if* there is an inadvertent "loophole" in the transition to operation of the FSA, then it is for Congress to remedy. In the meantime, "if the language of a statute is clear, that language must be given effect." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 452 (1988) (Scalia, J., concurring). The Sixth Circuit in *Carradine* found that the FSA "contains no express statement that it is retroactive nor can we infer any such express intent from its plain language." 621 F.3d at 580. Neither is there anything in the FSA indicating "by necessary implication" any intent to treat differently defendants who had committed offenses but had not yet been sentenced prior to August 3, 2010.

Because Defendant's third objection to the presentence investigative report is premised on a retroactive application of the FSA, it will be overruled.

### III.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's Objection Number 3 is OVERRULED.  The FSA is not applicable to cases in which the offense occurred prior to August 3, 2010.

                                        s/Robert H. Cleland  
                                        ROBERT H. CLELAND  
                                        UNITED STATES DISTRICT JUDGE

Dated:  March 18, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 18, 2011, by electronic and/or ordinary mail.

                                        s/Lisa Wagner  
                                        Case Manager and Deputy Clerk  
                                        (313) 234-5522